## Case No. 8,514.

### LORING et al. v. MARSH et al.

[2 Cliff. 311.][1]

Circuit Court, D. Massachusetts. Oct. Term, 1864.

EFFECT OF STATE LAW — CONSTRUCTION BY STATE COURT — PRIOR SUIT PENDING IN STATE COURT —RULE IN FEDERAL COURTS—PROCEEDINGS DIFFERENT.

1. The laws of the several states, except where the constitution, treaties, or statutes of the United States otherwise require or provide, are to be regarded as the rules of decision in trials at common law in the courts of the United States, in cases where they apply.

2. In cases depending upon the statute of a state, especially in those respecting the titles to

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]

land, the federal courts will adopt the construction of the state courts, when that construction is settled or can be ascertained.

3. The same rule prevails in suits in equity as at law.

4. The natural import of the words in the judiciary act includes the laws in relation to evidence as well as the laws in relation to property.

[Cited in Merrill v. Portland, Case No. 9,470.]

5. The construction given to a state statute of the description mentioned, by the state court, is regarded as a part of the statute, and is as obligatory on the courts of the United States as the text; and if the state court adopts new views as to the construction of such a statute, the federal courts will follow the latest settled adjudication.

[Cited in Bowditch v. Boston, Case No. 1,719.]

6. The decisions of the state courts, however, cannot be allowed to retroact upon the judgments of the federal courts. The supreme court will not reverse its own judgment in a case depending upon the local law, if correctly given at the time in accordance with the settled construction given to the law by the state court, even should it appear that the state court subsequently changed its views, and adopted a different construction. The same is true of the decisions of the circuit courts.

7. In the absence of any construction of a state statute by the state court, the federal courts derive their rules from the common law. Therefore, in an equity suit in this court, in which a motion for continuance was filed, upon the ground that a prior suit was pending in the supreme court of the state, depending upon the local law, between the same parties, and involving the same subject-matter, and until such cause might there be heard and determined, *held*, there was no occasion for continuance, because this court, in such case, must follow the construction given to the provision of the local law by the state court, if it can be ascertained; but if it cannot, then the duty of determining the true construction of the provision in question devolves first on this court, and finally on the supreme court.

8. Comments upon Board of Foreign Missions of the Presbyterian Church v. McMaster [Case No. 1,586].

9. The circuit court has no discretionary power to stay a suit in equity brought therein, or to refuse jurisdiction, on the ground that a prior suit involving the same subject-matter, and between the same parties, is pending in the state court of the district where the circuit court is held.

10. There are cases in which it has been held that the pendency of another suit between the same parties, for the same matter, in another jurisdiction, may be pleaded in bar or in abatement to a second suit.

[See Ex parte Balch, Case No. 790; United States v. Dewey, Id. 14,956.]

11. The rule in this circuit has always been, that the pendency of another action for the same cause in a state court is not a good plea in abatement.

[Cited in The Custer, 10 Wall. (77 U. S.) 218; The Prince Albert, Case No. 11,426; McKay v. Garcia, Id. 8,844; Stanton v. Embrey, 93 U. S. 554. Criticised in Brooks v. Mills Co., Case No. 1,955. Cited in U. S. v. Dewey, Id. 14,956; Brooks v. Vermont Cent. R. Co., Id. 1,964; Hughes v. Elsher, 5 Fed. 264; Latham v. Chafee, 7 Fed. 523; The Tubal Cain, 9 Fed. 837; Radford v. Folsom, 14 Fed. 99.]

[Cited in Vail v. Central R. Co. (N. J. Ch.) 4 Atl. 664. Cited in brief in Wilson v. St. Louis & S. F. Ry. Co., 108 Mo. 588, 18 S. W. 289.]

12. A priori a motion for a continuance, upon the ground of the pendency of another suit in the state court, cannot be granted here, when it appears to the court that the nature of the proceedings are different, the parties not the same, and there are questions presented for decision not involved in the suit in the state court.

13. Where, from an inspection of the pleadings which had been regularly filed under the rules, in an equity suit, the court can see that different questions are raised from those presented in a suit in the state court, and pending at the same time, a motion to refer the case to a master, with directions to inquire whether the subject-matter and parties were not the same in the two actions, must be denied.

Bill in equity. The case at this time came before the court upon a motion of the respondents, that the case might be continued until a prior suit in equity, pending in the supreme judicial court of the state, should be heard and determined. Should that motion be denied, then the respondents moved that the court should order the cause to be referred to a master, with directions to report whether the cases were upon the same matter and between the same parties. As a foundation of the motion for continuance, it was alleged that the bill of complaint in the state court was first filed; that the parties to the respective suits were the same, and that in substance and effect the subject-matter was also the same. The motion set forth that the subject-matter of both suits was the construction of the will and devise described in the bills of complaint, and that the same questions of law and fact were presented in the state court as were involved in the pleadings and proofs in this record. The suggestion was that the questions presented depended upon the local law; and the argument in support of the motion was in brief, that inasmuch as the federal courts, in construing a state statute constituting a rule of property, uniformly adopt as a part of the statute the settled construction given to it by the state court, it became the duty of the court here, in the exercise of its discretion, to decline to hear the parties in this cause, until the questions presented in the record arising under the local law had been fully settled by the state court. The will referred to in the motion and described in the bill of complaint was that of Abigail Loring, widow of Elijah N. Loring, formerly of the city of Boston, in this district. The record showed that she made her will on the 19th of October, 1858, and a codicil on the 14th of July of the following year. In view of the case as at this time presented, it is only necessary to notice the following provisions of the will: "All the rest, residue, and remainder of all my estate and property, real and personal, I give, devise, and bequeath unto Levi H. Marsh and Samuel E. Guild, both of said Boston, to have and to hold the same, to them and the survivor of them and their and his heirs and assigns forever, to their own use, but in trust to, under, and for the following purposes,

trusts, and limitations, namely, to hold, manage, invest, and reinvest the same according to their best discretion, and to pay over" to each of her three children, Abby M. Loring, Cornelia W. Thompson, and Josiah Q. Loring, one third of the net income therefrom during their several lives. There was also a provision that, "upon the decease of my said children severally, the shares of said income which they would continue to take if living shall be retained and invested by the trustees until the decease of my last surviving child, and shall then, with the principal or trust fund, be disposed of for the benefit of the poor in the manner hereinafter provided." The remaining provision material to be noticed was that "when, upon the decease of all my children, the trust fund is to be disposed of as aforesaid, the said Marsh and Guild, or their successors as trustees, shall select and appoint three or more gentlemen, who shall be informed of the facts by the trustees, and shall determine how by the payment to permanently established and incorporated charitable institutions, my wish to benefit the poor will be best carried into effect." The first-named trustee was also appointed executor, and the request of the testatrix as expressed in the will was, that he should be exempted from giving sureties on his official bond. The testatrix died on the 8th of November, 1862, seised and possessed of a large amount of real and personal estate. The pleadings showed that the daughter, Cornelia W. Thompson, died on the 10th of June, 1859, without issue, and that her son Josiah Q. Loring died on the 6th of April, 1862, leaving three children, who were the complainants mentioned in the bill of complaint. The case also showed that Abby M. Loring, the other daughter mentioned in the will, died on the 2d of June, 1863, unmarried, and that Peter Renton was duly appointed administrator of her estate. Further, the complainants alleged that Samuel E. Guild, one of the trustees, died on the 16th of July, 1862, and the fact was not controverted. Abby R. Loring, Marion W. Loring, and Elijah James Loring, infants, who brought this suit by Christian W. Loring, their mother and prochein ami, were the parties complainant. They were children of Josiah Q. Loring, deceased, and both they and their mother were alleged to be citizens of the state of New York. The respondents were Levi H. Marsh, the surviving trustee, and Peter Renton, administrator of the estate of Abby M. Loring, both of Boston, in this district, and citizens of the commonwealth of Massachusetts, together with certain corporations and associations subsequently made parties respondent under an amendment allowed by the court. The suit in the state court was a bill of interpleader, brought by the said Levi H. Marsh as executor and trustee under the will of the said Abigail Loring. The bill of complaint as exhibited

in this record alleged that Peter Renton, administrator as aforesaid, was also the duly appointed guardian of the said minors, and contained the proper allegations to make the said Peter Renton and the said minors and the several corporations and associations before mentioned parties respondent. The transcript of the record from the state court also showed that Peter Renton appeared in the suit and filed his answer, in which he alleged that the complainants in this suit, Abby G. Loring, Marion W. Loring, and Elijah James Loring, were residents and citizens of the state of New York, and that they had no place of residence in this commonwealth. Service was not made upon them; but it appeared that the state court, on the 24th of October, 1864, passed an order that they should appear and answer the bill of complaint within one month from the date of the order, and that the complainants serve them with notice thereof by the usual publication as therein directed. Among other things, the complainants in the case alleged that all the valid and legal trusts created and declared by said will had ceased and determined, and that they and Abby M. Loring, whose administrator Peter Renton then was, were the sole heirs at law of Abigail Loring; that the property in the hands of Levi H. Marsh, as trustee under the will, rightfully belonged to them and to said Renton, as administrator as aforesaid, and that it was the duty of said Marsh to convey, transfer, and deliver the same in pursuance of that rightful claim. The prayer of the bill of complaint was that Marsh might be decreed to account with the complainants and pay over to them their shares of the property and money so held by him in trust, and as such trustee under the will.

In the suit pending in the state court, the complainant alleged that he accepted the trust, and was duly appointed executor; that he paid the bequests mentioned in the will which precede the clause disposing of all the rest, residue, and remainder of all her estate and property; that the other trustee and the parties entitled to the life estate, having deceased, he proceeded to execute the trust in accordance with the other provisions of the will, to which reference has already been made; that he accordingly selected and appointed three persons as therein directed, to determine the payments to be made; that they accepted the appointment, were duly informed of the facts by the complainant, and advised, made, and declared in writing to the trustee the distribution of the trust fund as therein set forth and described. It should be remarked that the distributees of the funds as therein declared, were the several corporations and associations made respondents in the respective bills of complaint. The before-named complainant also alleged that Peter Renton as administrator and guardian, and the minor children, had demanded of him

the transfer, conveyance, and payment to them of the moneys and estates in his hands as trustee under the said will, claiming to be entitled to the full possession and enjoyment of the same, and alleging that the said devise for the benefit of the poor was null and void. Following these averments was the formal allegation that he was ready to convey, transfer, and pay over said trust estate to whomsoever was entitled thereto, but that he was advised that he could not safely convey or pay over the same to any of the said parties. Wherefore he prayed that the respondents might be decreed to interplead together, and that it might be ascertained in such manner as the court should direct, to which of them the said trust estate ought to be conveyed and assigned.

B. R. Curtis, C. Cushing, and Hutchings & Wheeler, for complainants.

Sidney Bartlett, F. C. Loring, and C. W. Loring, for respondents.

CLIFFORD, Circuit Justice. Assuming all to be true that is alleged in the motion, still the argument in support of it is based upon the assumption, that the questions arising under the local law are undertermined; and of course it concedes that, if the fact be otherwise, that if no such questions are involved, or, if involved, that they have already been determined, the court here may properly proceed to hear and determine the cause. The theory of the motion is that the construction of the will and devise referred to in the motion depend upon the local law, and that the cause should be continued until the state court shall determine what is the true intent and meaning of the local law upon that subject, and not that there is any conflict of jurisdiction, arising out of the fact that the bill of interpleader was filed in the state court two days before the bill of complaint was filed in this court. Careful attention to the precise theory of the written motion will very much facilitate the proper application of decided cases to the question presented for decision.

"When a testator omits to provide in his will for any of his children, or for the issue of a deceased child," the Massachusetts statute of wills provides that "they shall take the same shares of his estate, both real and personal, that they would have been entitled to if he had died intestate, unless they shall have been provided for by the testator in his lifetime, or unless it appears that such omission was intentional, and not occasioned by accident or mistake. Gen. St. § 25, p. 478; Rev. St. c. 62, § 21. The theory of the complainants here is that the devise for the benefit of the poor, under the circumstances disclosed in the pleadings, cannot be executed, and that in fact it is null and void. They also insist that under the provision referred to in the Massachusetts statute of

wills, they take the same share of the estate, both real and personal, that they would have been entitled to, if the testatrix had died intestate. The respondents deny both propositions, and insist that the devise in question has been duly executed and that it is neither void nor voidable; and they also deny that the statute of wills gives the complainants any portion of the property, real or personal, of the deceased. Where a child has no share given him or her in the will, the supreme court of the state hold that he shall have a share, unless it is manifest from the other parts of the will or other evidence that the omission was intentional, and not occasioned by accident or mistake. Wilson v. Fosket, 6 Metc. [Mass.] 400. The supreme court of the state have also held that the provision in the statute of wills already recited applies to a child or children born after the making of the will, and before the death of the father, and gives him or them the same rights as those have who were born before the will was made. Able counsel maintained the contrary, but the court was of the opinion that, in adopting that provision, it was not the intention of the legislature to alter the law in that respect, but only to give effect to the old statute, and give the authority of positive law to the construction which had previously been put upon it by the courts of the state. The proposition attempted to be maintained in the argument was, that by the term "omits to provide in his will," was meant a child then living, but the court held otherwise, and the chief justice, who delivered the opinion, remarked that a man's will is ambulatory until his decease, as it may be revoked, republished, altered, or modified by any codicil or number of codicils, quite up to the time of his death. The conclusion of the court was, that the time to which the question of omission applies is the time of the testator's decease, and the construction upon that subject may be regarded as settled beyond dispute. Bancroft v. Ives, 3 Gray, 367. Children, therefore, born after the will of their father was made, if before his death, unless provided for in some subsequent codicil, are as much entitled to the benefit of that provision as those who were born before the will was made. Granting that to be so, still the respondents insist that the construction given does not authorize the conclusion that the complainants, who are grandchildren of the testatrix, must come within the same rule, although the case shows that they were severally born, and that their father deceased in the lifetime of the testatrix. Looking at the whole case, it is clear that there are questions presented in this record which are not involved in the record in the state court, and which cannot be decided there under the pleadings exhibited in this case. On the other hand, it is equally clear that there is a question common to both cases, and that that question is

one which has not been directly decided by the state court, and that it depends upon the construction of the local law. Taking the case as stated, the question is, what is the proper course to be pursued? The counsel of the respondents insist that the cause should be continued; but the counsel of the complainants resist that proposition, and contend that, if granted, it is a denial of justice. The circuit courts have, under the judiciary act, original cognizance, with the courts of the several states, of all suits of a civil nature, at common law, or in equity, where the matter in dispute exceeds the sum or value of $500, and the suit is between the citizens of the state where the suit is brought and citizens of another state. 1 Stat. 78. The record shows that the complainants are citizens of the state of New York, and that the respondents are citizens of this commonwealth. Evidently, therefore, the case is one within the jurisdiction of the court, unless some new condition be interpolated into the provision in the act of congress, by which jurisdiction is conferred. The continuance, if granted, must be to the next term, and from term to term indefinitely, until the expected adjudication is made. The principal respondent in this suit is the complainant in the suit in the state court. The service there has not been completed, and it may never be made, or the complainant may dismiss his bill of complaint or fail to prosecute it with effect. Pending controversies, whether at law or in equity, are subject to many contingencies by which they may be retarded or prevented from being prosecuted to judgment, and yet the argument is that the cause must be continued indefinitely, until the question depending upon the local law is determined by the state court. The industry of counsel, however, has not furnished the court with any decided case which supports any such proposition, and the researches of the court in that behalf have not been attended with any better success. Undoubtedly the rule is that the laws of the several states, except where the constitution, treaties, or statutes of the United States otherwise require or provide, are to be regarded as rules of decision in trials at common law in the courts of the United States in cases where they apply. 1 Stat. 92. Consequently it was very early held, and has been so determined on many occasions, that in cases depending upon the statute of a state, especially in those respecting the titles to land, the federal courts will adopt the construction of the state courts, where that construction is settled or can be ascertained. Polk v. Wendall, 9 Cranch [13 U. S.] 87. The same rule prevails in suits in equity as at law, and in both it is the settled practice of the supreme court in cases depending on the laws of a particular state, to adopt the construction which the courts of the state have given to those laws. Elmendorf v. Taylor, 10 Wheat.

[23 U. S.] 157. Justice to the citizens of the several states required this to be done, and the natural import of the words in the act of congress includes the laws in relation to evidence as well as the laws in relation to property. Vance v. Campbell, 1 Black. [66 U. S.] 430; Wright v. Bales, 2 Black. [67 U. S.] 535. The construction given to a state statute of the description mentioned, by the state court, is regarded as a part of the statute, and is as obligatory on the courts of the United States as the text; and if the state court adopts new views as to the construction of such a statute, the federal courts will follow the latest settled adjudication. Leffingwell v. Warren, Id. 599; U. S. v. Morrison, 4 Pet. [29 U. S.] 124; Green v. Neal, 6 Pet. [31 U. S.] 291. Decisions of the state courts, however, cannot be allowed to retroact upon the judgments of the federal courts, and consequently the supreme court will not reverse its own judgment, even in a case depending upon the local law, if correctly rendered at the time, in accordance with the settled construction given to the law by the state court, although it may appear that the state court subsequently changed its views, and has adopted a different construction. The established rule also is that the judgment of the circuit court will not be reversed under like circumstances. Morgan v. Curtenias, 20 How. [61 U. S.] 3. Guides for the construction of the laws of congress are furnished in the rules of the common law, and the same rules apply in the construction of a state statute, except in cases where the courts of the state have already furnished the construction. Rice v. Railroad Co., 1 Black. [66 U. S.] 374. The supreme court held, in Charles River Bridge v. Warren Bridge, 11 Pet. [36 U. S.] 545, that the rules of the federal courts for the construction of statutes were borrowed from the common law, and that rule is undoubtedly correct in all cases except where the courts of the state have previously determined the construction of a local law. See, also, 1 Story, Comm. (3d Ed.) § 158.

Applying those rules to the present case, there is no occasion for a continuance of the cause, because this court must follow the construction given to the provision by the state court, if it can be ascertained, and if not, then the duty of determining in this case what is the true construction is devolved in the first place upon this court, and finally upon the supreme court. Such has been the uniform practice of the court, and it is not perceived that there is any necessity for any change. Attempts have been made to maintain the proposition that, where there is a concurrent jurisdiction in the state court and in the circuit court, the latter has a discretionary power either to stay the suit or to refuse jurisdiction, but such attempts in this circuit have never been attended with any success. An example of such an attempt is to be found in the case of Wadleigh

v. Veazie [Case No. 17.031], which was a writ of entry for the recovery of certain land situated in the state of Maine. The defendant pleaded in abatement the pendency of a prior suit in the state court between the same parties for the same tract of land. Judge Story held that a plea in abatement to a suit in the circuit court for the recovery of land. that another action in which the present defendant was plaintiff and the present plaintiff was defendant, was pending in the state court, was not a good plea, and, in disposing of the cause, he adverted to the suggestion made in the argument that it was competent for the court to order a stay of the suit, or to refuse jurisdiction. He remarked that he knew of no such authority; and if none such existed in that case where the only difference between the two suits consisted in the fact that the parties in the circuit court were reversed, it may well be assumed that none such can arise in any case within the jurisdiction of the court. "If the parties are rightfully before the court," said that learned judge, "in a case within its jurisdiction, however unpleasant it may be to entertain a suit here in regard to which there may possibly be a diversity both of verdict and judgment from those given in the state court, I know not how that is to be avoided." Attention has very properly been called, since the argument, to the case of Board of Foreign Missions of the Presbyterian Church v. McMaster [Case No. 1,586], as asserting a contrary doctrine. The bill of complaint in that case was filed in the circuit court of the United States by the complainants against Samuel S. McMaster. the administrator de bonis non with the will annexed. The facts are not very clearly stated, but the purpose of the suit was to enforce the payment of a bequest contained in the will. The defendant. it seems, had paid the debts of the deceased, and the other legacies mentioned in the will, and had on hand a certain sum to be applied to the bequest in question. if the same was valid. The answer alleged that the said amount was claimed by other persons, on the ground that the bequest was void, and that the respondent had filed a bill of interpleader in the county court, against all the parties, and that the same was still pending.

Under that state of the case the district judge, sitting in the circuit court, held that the rule of comity in such a case required that paramount authority should be yielded to the court before which the proceedings were first instituted; but he afterwards proceeded to examine the merits of the case, and having come to the conclusion that the bequest was void, entered a final decree, dismissing the bill of complaint with costs. "Courtesy requires," says the learned judge, "that paramount authority should be yielded to the court before which the proceedings were first instituted."

Doubts are entertained as to what is meant by the district judge in that part of the opinion; but if it must be understood as affirming that there is any discretionary authority vested in the circuit court to stay the suit under such circumstances or to refuse jurisdiction, it will be sufficient to say that it is not possible for this court to yield its assent to the proposition, and none of the authorities cited support it. Cases may unquestionably be found where it is held that the mere pendency of another suit for the same matter between the same parties in another jurisdiction, may be pleaded in abatement or in bar to a second suit. The decision in Hart v. Granger, 1 Conn. 154, was of that class, but the case has recently been distinctly overruled by the court in which it was made. Hatch v. Spofford. 22 Conn. 495. The English cases go no further than to hold that the plea of another suit depending will be good, if the first suit was instituted in the same jurisdiction. Such a plea is not a good one in the courts of that country, if the first suit is pending in another country, nor in the colonies of the parent country. Maule v. Murray, 7 Term R. 470; Imlay v. Ellefsen, 2 East. 453; Dillon v. Alvares, 4 Ves. 357; Foster v. Vassal, 3 Atk. 587; Bayley v. Edwards, 3 Swanst. 703; Howell v. Waldron, 2 Ch. Cas. 85; 2 Daniell, Ch. Prac. 721; Story, Eq. Pl. § 741. The weight of American authority also is decidedly to the same effect. The undeviating rule in this circuit has been that the pendency of another action for the same cause in a state court is not a good plea in abatement. White v. Whitman [Case No. 17,561]; Lyman v. Brown [Id. 8,627]; Wadleigh v. Veazie [supra]. The same rule is established in most of the states. Bowne v. Joy, 9 Johns. 221; Walsh v. Durkin, 12 Johns. 99; McJilton v. Love, 13 Ill. 486; Mitchell v. Bunch, 2 Paige, 606. Much consideration was given to the whole subject in the case of Salmon v. Wootton, 9 Dana, 422, to which reference is specially made, for a clear and full exposition of the reasons on which the rule is founded. Expressions are to be found in some of the cases decided in the supreme court, which until carefully examined may seem to favor the opposite rule. Take, for example, the case of Smith v. McIver, 9 Wheat. [22 U. S.] 532, where the opinion was delivered by the chief justice. He says that in all cases of concurrent jurisdiction, the court which first has the possession of the subject-matter must decide it; but that remark was made in a case where all the questions had been decided in a court of law, and the proposition was to have them reviewed on the chancery side of the court.

Another rule is, where there are several authorities equally competent to bind the goods of a party when executed by the proper officer. that they in general shall be considered as effectually bound by the au-

thority which first actually attaches upon them and takes them into custody. Numerous cases have arisen where that principle is involved; and in enforcing it there will be found expressions which, if separated from the facts to which they were applied, would seem to conflict with the present rule. Hagan v. Lucas, 10 Pet. [35 U. S.] 400, is of this class; and so also are Wallace v. McConnell, 13 Pet. [38 U. S.] 151, and Taylor v. Carryl, 20 How. [61 U. S.] 583. The strongest case of the description mentioned is that of Shelby v. Bacon, 10 How. [51 U. S.] 68, in which the opinion was given by Mr. Justice McLean. But the remarks of the learned judge were not necessary to the decision of the case, and clearly cannot be regarded as a judicial determination. The case of Suydam v. Broadnax, 14 Pet. [39 U. S.] 67, also contains an expression which may or may not be construed in the same way. None of these cases, however, decide the question under consideration, and I am of the opinion that the pendency of a suit in the state court cannot be pleaded in bar or abatement to a suit between the same parties in this court. Suppose it were otherwise, however, still the rule would not apply in this cause, because the nature of the proceedings is different, the parties are not the same, and there are questions presented for decision here which are not involved in the suit in the state court. The motion for a continuance is, therefore, denied.

The second branch of the motion is, that the cause may be referred to a master, with directions that he shall look into the two cases and report whether or not they are both upon the same matter and between the same parties. Where the defendant pleads the pendency of another suit, it is said in the practice of the parent country, that the plaintiff ought not to reply to such a plea, even if he disputes the fact, but that he should obtain a reference to a master. 2 Daniell, Ch. Prac. 726, 797. Strong doubts are entertained whether that rule ever had any application where the alleged prior suit was not pending in the same jurisdiction, because the learned author speaks of the plea as being clearly a good plea, whereas he had previously stated, in the same section of the same chapter, that the plea of another suit depending is not a good plea in the court of another country, or in Ireland, or in the colonies. Id. 658, 726. But it is unnecessary to decide that question, as there is no plea of any kind in this case. The docket entries show that the cause was set down for hearing upon bill, answer, replication, and proofs. The practice of the circuit courts is chiefly regulated by the print-ed rules prescribed by the supreme court. A reference to the course of proceeding where pleas are filed is not necessary, because, as before stated, there is no plea in the case of any kind. The process of subpoena cannot issue from the clerk's office in any suit in equity until the bill of complaint is filed at the office. Whenever the bill is filed, the clerk is required to issue the process of subpoena, as of course, upon the application of the complainant, which shall be returnable into the clerk's office the next rule-day or the next rule-day but one, at the option of the complainant. The appearance-day of the respondent is the rule-day to which the subpoena is made returnable, provided he has been served with the process twenty days before that day. The answer, plea, or demurrer must be filed by the respondent, unless the time for it is enlarged on the rule-day succeeding that of entering his appearance. The former rule, that, if a respondent submits to answer, he shall answer fully to all the matters of the bill, is repealed in cases where he might by plea protect himself from such answer and discovery. But he is entitled in all cases by answer to insist upon all matters of defence, except such as are dilatory, in bar, or to the merits of the bill of complaint, of which he could avail himself by a plea in bar. After an answer is filed on any rule-day, the complainant is allowed until the next succeeding rule-day to file exceptions thereto for insufficiency, and no longer; but if no exception shall be filed thereto within that period, the rule is that the answer shall be deemed and taken to be sufficient. Whenever the answer shall not be excepted to, or shall be adjudged sufficient, the complainant shall file the general replication thereto on or before the next succeeding rule-day thereafter; and in all cases where the general replication is filed, the cause shall be deemed, to all intents and purposes at issue, without any rejoinder or other pleading on either side. The dismissal of the suit follows if the complainant omits or refuses to file such replication within the prescribed period. The proceedings in this case have been in conformity to those rules, and they are correct. No exceptions were taken to the answer of the respondents, and consequently, when the prescribed period had elapsed, it became the duty of the complainants to file the general replication. The motion is denied.

[NOTE. The case was subsequently heard on its merits upon bill and pleadings, and was dismissed, with costs. Case No. 8,515. From this decision the complainants took an appeal to the supreme court. which affirmed the decree below. 6 Wall. (73 U. S.) 337.]