## A. R. Johnson et al., Appellants, v. Ruth Sheets et al., Appellees.

JUDGMENT—*when equity will prevent enforcement.* Where judgment in attachment is rendered in favor of defendant who immediately brings suit on the attachment bond against the sureties and gets judgment thereon, although the case was sought to be postponed on the ground that the original attachment suit was to be appealed, equity will grant relief against the enforcement of such judgment in the hands of an assignee who is cognizant of all the facts, where on appeal the attachment suit was sustained.

Appeal from the City Court of Granite City; the Hon. J. M. BANDY, Judge, presiding. Heard in this court at the March term, 1912. Reversed and remanded. Opinion filed October 7, 1912.

W. L. COLEY, for appellants.

EDWARD L. MAHER, *pro se,* and others, for appellees.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellants filed a bill in chancery for an injunction to restrain proceeding, under execution issued upon a judgment against them in favor of Ruth Green, now the appellee Ruth Sheets, and asking that said judgment be canceled of record and vacated; also that a certain judgment against said Ruth Green now owned by them be set off against the judgment of said Ruth Green against appellants. Ruth Green, by her present name of Ruth Sheets, Edward L. Maher, her attorney in the litigation above referred to, and Simon Henry, sheriff of Madison county, Illinois, were made defendants to the bill, and filed a general demurrer thereto, which was sustained by the trial court. That court further decreed that appellants' bill of complaint be dismissed for want of equity, and that the costs of suit be taxed against them.

The bill makes the following statement of the facts

relied on: Heller and Livingston brought suit in attachment against said Ruth Green, before one Sowell, a justice of the peace of said Madison county. She was duly served with summons in said cause and at the trial was represented by her attorney, the appellee, Edward Maher; The Commonwealth Steel Foundry Company, employer of said Ruth Green, was summoned by attachment as garnishee. The suit resulted in a judgment rendered November 8, 1909, in favor of the plaintiffs therein on an *assumpsit* issue for $11.00 and costs and in favor of the defendant on the attachment issue. The attachment bond was for $22.00, conditioned as provided by law and signed by appellants herein as sureties, Heller and Livingston being nonresidents. A few days after the judgment was so entered, the defendant Ruth Green, through her said attorney, brought suit on the bond before one Ryan, another justice of the peace of said county. Appellants alone were served with process and on November 20, 1909, the day set for trial, appellants, by their attorney, appeared before said Ryan at the hour of trial and notified him that the original suit, brought by Heller and Livingston against Ruth Green, would be appealed to the Circuit Court of Madison county; that it would stand for trial at the January term, 1910, of said court, and told the justice that he ought not hear said cause on the attachment bond until the final hearing on appeal of said former case. Nevertheless said Ryan proceeded to hear the cause and rendered judgment thereon in favor of Ruth Green and against appellants in the sum of $45.00 as damages, for wrongfully suing out the attachment writ in said former cause. At said time appellants had no legal defense to said cause before said Ryan, and could do nothing other than notify the parties to the suit and the justice of their intention to appeal from the judgment in the previous suit. Afterwards, within the twenty days allowed by law, the attachment suit was appealed to

the Circuit Court of said county and at the January term, 1910, of said court, said cause was heard and the attachment was sustained in favor of Heller and Livingston against said Ruth Green. Said Maher was present representing Ruth Green in that proceeding. The bill further states that by reason of the above facts, the judgment rendered by justice of the peace Ryan, in favor of Ruth Green and against appellants, on the attachment bond, ceased to have any foundation and became in equity null and void; that nevertheless, appellee Maher, claiming to be the assignee of said judgment, but having full knowledge of all the facts and intending to injure, annoy and harass appellants, and to cast a cloud on the title to their property in said Madison county, did, on June 2, 1910, wrongfully cause a transcript of the judgment against them on the attachment bond to be filed in the office of the clerk of said Circuit Court; that by reason thereof, said judgment appears to be a lien and cloud upon the property of appellants in said county, and that the same should be cancelled and declared of no force and effect; that on June 8, 1911, said Maher caused an execution to be issued upon said judgment to the sheriff of said county, which was served upon appellants, and that said sheriff threatens to and will, unless restrained by order of the court, levy upon and sell property of appellants for the satisfaction of said judgment; that said attachment, having been sustained in the Circuit Court upon appeal, they ought not in equity and good conscience be required to pay said judgment or any part thereof, and the same ought to be declared null and void and of no force and effect; that the record thereof should be cancelled and vacated and appellees perpetually restrained and enjoined from further annoying and harassing appellants on account of said judgment; that appellants have become the assignees of the judgment rendered on appeal in said attachment suit, no part of which

has been paid, in favor of Heller and Livingston against said Ruth Green.

The prayer of the bill is that appellees be restrained and enjoined by the court, from proceeding further under said execution or judgment; that said judgment be canceled of record, vacated and set aside, or that appellants' judgment against Ruth Green be set off against appellants on said attachment bond.

The question presented to us is whether or not the facts stated in the bill, all of which, for the purposes of this hearing, must be taken as true, are sufficient to entitle appellants to the equitable relief prayed for.

The position of appellees, in support of their demurrer, is that equity will not interfere where there is or has been adequate remedy at law. It is not contended by them that appellants could now have any adequate remedy at law but it is insisted that they could at one time have that remedy by appealing to the Circuit Court from the judgment against them on the attachment bond. It is true that had they appealed from the judgment of justice of the peace Ryan to the Circuit Court, they would in all probability have defeated the action against them upon the bond. But should their failure to pursue that remedy prevent them from obtaining relief in equity against the enforcement of a judgment against them on an attachment bond, when it was subsequently decided by a competent court that there had been in fact no breach of the bond and thereby the foundation, upon which the judgment rested, had been destroyed. It cannot be reasonably denied that it would be most inequitable to require appellants to pay a judgment recovered against them for the breach of a bond upon which they were sureties when, as a matter of fact, no such breach had occurred, and while the facts and circumstances relied upon to give them relief require a somewhat novel application of the principles of equity, yet we are not wholly without precedent upon this subject.

The case of McJilton v. Love, 13 Ill. 486, had many

points in common with the case under consideration by us. In that case one Fairfield in May, 1846, through his attorneys, Field and Hall, recovered a judgment against James Love in the Circuit Court of the county of St. Louis, Missouri, for $800.00. Execution was issued and returned in October of that year satisfied in full by order of the plaintiff. About a month later, Field and Hall entered a motion to vacate the entry of satisfaction and award an execution on the judgment to enable them to collect the sum of $500 on the ground that so much of the judgment was assigned to them by Fairfield, with the knowledge of Love, before the return of the execution. On January 9, 1847, the court sustained the motion and set aside the entry of satisfaction as to $500.00, directing an execution to issue for that amount for the benefit of Field and Hall. Love resisted the motion and sued out a writ of error to the Supreme Court of the State of Missouri, which, at the March term, 1850, reversed the order of the court below, sustaining the motion of Field and Hall. In the meantime in March, 1847, Field and Hall, in the name of Fairfield, for their use, sued out of the Circuit Court of Madison county in this state, an attachment against Love, which was levied on certain real estate. They declared on the Missouri judgment above mentioned, alleging that $500.00 of it remained due and unpaid. Upon the trial Love introduced the return of the sheriff, showing the satisfaction of the judgment and Field and Hall produced a transcript of the subsequent proceedings. The court rendered a judgment against Love for $569.09 and awarded special execution against the property attached. Love prosecuted an appeal to the Supreme Court of this state, where the judgment against him was affirmed at the December term, 1848. Love v. Fairfield, 10 Ill. 303. Field and Hall subsequently assigned their judgment to McJilton, who bid in the property when it was sold under special execution and received a certificate of purchase therefor. In April,

1850, after the Supreme Court of Missouri had reversed the order of the court below, sustaining the motion of Field and Hall, Love filed a bill in chancery in the Circuit Court of Madison county, Illinois, against Fairfield, Field, Hall and McJilton, setting forth the above facts, alleging that McJilton purchased the judgment, with knowledge of all the previous proceedings, and praying that the sale to him be set aside and the defendants enjoined from asserting any rights under the judgment, and on the hearing the trial court sustained his bill and granted the injunction prayed for. On appeal the Supreme Court of this state affirmed the decree of the court below. In the course of the opinion, the court stated, among other things, that so long as the order sustaining the claim of Field and Hall remained unreversed, Love was precluded from sustaining a plea of payment; that if he had offered to produce proof of payment to Fairfield, he would have been met with the objection that the court before which the judgment was obtained had judicially determined that the payment was made in fraud of their rights and therefore could not be interposed to defeat an action brought for their benefit; that he resorted to the only effectual means to remove the obstacle in the way of a perfect defense to the action in this state by procuring a writ of error to reverse the order vacating the entry of satisfaction made by the Missouri court; that the effect of the reversal of that order was to restore the entry of satisfaction and leave the judgment discharged of record; that it exonerated Love from the payment of any part of the judgment to Field and Hall, and left the judgment in this state without the least foundation upon which to rest; that the law is well settled that where a judgment is reversed the parties are restored to their original rights, so far as it can be done without prejudice to third persons; that if the plaintiff has derived any benefit from the judgment, he must make as full restitution to the defendant as the circumstances of

the case will permit; that if he has purchased property under the judgment, and still retains the ownership, the defendant may recover the specific property in the appropriate action; that the complainant had made out a clear case for the interposition of a court of equity against Fairfield, Field and Hall and that McJilton, as assignee, occupied no more favorable position than they; that he took the judgment subject to all defenses that existed against it in the hands of the party from whom he received it.

We have quoted at length from the above case for the reason that the facts there were so similar to the case under consideration, and because they seemed to raise substantially every question that could be raised here. The doctrine laid down as the law in that case appears to us to be conclusive of this case, and in accordance with it appellant was entitled to the relief prayed for in his bill, and the demurrer to the same should have been overruled. The decree of the court below will be reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*