McJilton v. Love.

*Decree affirmed.*

JAMES T. McJILTON, Appellant, v. JAMES LOVE, Appellee.

APPEAL FROM MADISON.

The courts of this State will give the same faith and credit to judicial proceedings had in other States, as are given to them in such States.

The pendency of a suit in one State, cannot be pleaded in bar or abatement of a second action in another State, between the same parties and for the same cause of action.

The pendency of a writ of error cannot be pleaded in abatement of another action in the same State, unless the writ of error operates as a supersedeas, nor even then if the writ of error was sued out after the commencement of the second action.

A bill may be filed to enjoin proceedings upon a judgment of one of the courts of this State, recovered upon a judgment in the courts of another State, if the party applying has not been guilty of any laches in the assertion of his rights, and the judgment of the foreign court has been reversed.

The rights of third parties acquired under an erroneous judgment, are not divested by the reversal of such judgment.

The assignee of a judgment takes it subject to all the equities subsisting between the original parties, and will not be protected as a *bonâ fide* purchaser under such judgment, if it shall be erroneous.

A judgment cannot be so transferred as to vest the legal interest in the assignee. It is a mere chose in action, and the beneficial interest only passes by the assignment; the assignee takes the judgment subject to all defences that existed against it.

This was a bill in chancery, filed in the court below by Love against the said McJilton, Arthur Fairfield, A. P. Field, David M. Hall, Andrew Miller, John G. Gammon, and William Hardley.

The bill sets forth, that on the 11th day of May, 1846, the said Arthur Fairfield recovered a judgment by default against the said Love, in the Circuit Court of St. Louis county, State of Missouri, for the sum of $800 and costs; that five days after the rendition of said judgment an execution was issued thereon, which said execution was returned *nulla bona,* but that afterwards, on the 28th day of October, 1846, by a written order from said Fairfield, the sheriff made an additional return on said execution, that the same was returned satisfied in full, costs paid by defendant; that on the 9th January, 1847, said Field and Hall moved the Circuit Court to vacate the entry of satisfaction on said judgment, for the reasons,

1. That said Field and Hall had an assignment of $500 of said judgment from the said Fairfield, before said satisfaction was entered.

2. That said Love knew that said Field and Hall had an interest in said judgment at the time he settled the same with said Fairfield, which motion was allowed and the entry of satisfaction vacated by said court, to which the said Love excepted.

That on the 12th of January, 1848, the said Love filed a motion for a rehearing of said motion, which was overruled by said court and excepted to by said Love; all which matters appear from a reference to the record of said court, made part of the bill. The bill further states that said Field and Hall, under the name of Arthur Fairfield, commenced a suit by attachment in the Circuit Court of Madison county, Illinois, upon an affidavit that the said Love was indebted to them in the sum of $500

upon said judgment, which attachment was levied upon certain lands in said county of Madison; that a judgment was obtained on said attachment at the August term, 1848, an appeal taken to the Supreme Court, and the said judgment affirmed by the Supreme Court, at the December term, 1848, and is reported in 5 Gilman; that the property levied upon by the attachment was sold on an execution issued thereon to the said McJilton, and charges that McJilton bought said judgment from said Field and Hall, but does not know whether he paid any thing for said judgment, and calls upon him to answer; that said property was sold to John McJilton, as assignee of said Field and Hall, with full knowledge of said Love's rights in the premises. The bill further sets forth that Love prosecuted a writ of error to the Supreme Court of Missouri, from the decision of the Circuit Court of St. Louis county, on the motion vacating the entry of satisfaction of judgment; and that at the March term, 1850, the Supreme Court of Missouri reversed the decision of said Circuit Court, as appears from the record of the proceedings of said Supreme Court filed with said bill. The bill charges that said Love is innocent of the acts charged against him in this suit in the original judgment, and that he was never served with process; admits that the sheriff's return shows he was served; charges that he knew nothing of the proceedings until after judgment was rendered against him; that on hearing of said judgment he thought it best to pay or compromise the same, and, together with one Murphy and others, he made an arrangement with said Fairfield, by which said Fairfield was to dismiss a suit which he had instituted against said Murphy and others upon the same cause of action, and that they were to settle up said judgment against him, said Love; charges that said judgment was settled up and paid to said Fairfield, and the execution returned satisfied in full as above stated; charges that at the time of payment he, said Love, knew nothing of the assignment of part of said judgment to said Field and Hall who sued out attachment on said judgment to harass and oppress him, said Love, with full knowledge that he had taken the case to the Supreme Court of Missouri, and that McJilton, the assignee, purchased the land with

McJilton *v.* Love.

full knowledge of said Love's rights in the premises; and charges that said Field and Hall, and the securities in the attachment-bond are insolvent; waives oath to the answers; prayer that the clerk of the Circuit Court of Madison county, or some other person, be appointed to receive the amount for the judgment and interest thereon, and if the decision should be in favor of said Love, that said money be paid back to him, but if the decision should be in favor of said McJilton and the other defendants, that then the same should be paid over to said McJilton, and such payment should be considered a redemption of said property within twelve months, as required by law; prayer for injunction and for general relief.

The answer of McJilton denies all knowledge of any of the proceedings had in the Circuit Court of St. Louis, or in the Supreme Court of Missouri, upon the original judgment, the entry of satisfaction and vacation thereof, and the renewal of the decision on the vacation of the entry of satisfaction, at the time he purchased the judgment of the Circuit Court of Madison county, Illinois, from said Field and Hall; states that he purchased the judgment from Field and Hall after the execution had been issued and levied on the land under said judgment; and denies that at the time said land was sold to him under the execution, he had knowledge that said Love had prosecuted a writ of error to the Supreme Court of Missouri; states that he took said judgment in part payment for property in St. Louis sold by him to said Hall in good faith, believing it to be a valid judgment, and that he purchased said property legally at the sale on the execution, and paid the costs in full to the sheriff; denies that said Hall is insolvent, and avers that he is worth the full sum of $10,000, and believes the securities upon the bond are also solvent and responsible for any damages sustained; avers that Love had a full defence at law, and cannot be admitted to litigate in a court of equity the matters which he could urge by way of defence in the attachment suit.

The answer of Field and Hall admits the obtaining of the original judgment, and the proceedings had thereon in the courts of Missouri, and also the obtaining of the judgment in attachment in the Madison Circuit Court, and the sale of the land,

under the execution issued thereon, to said McJilton; states that McJilton bought the said judgment from them for about $600, which sum was taken by him in part payment for a house and lot sold to him by them; denies that said McJilton had knowledge of any rights or pretended rights or equities in the premises; avers that the said Love consented and agreed to the assignment of the said $500, a part of said judgment; denies that the said Love was innocent of the acts charged against him until after said judgment was obtained; denies that said Love and Murphy, or any one else, made an arrangement to settle up, and did settle up said judgment with said Fairfield, and denies that same was paid to said Fairfield or any one else for him; denies that any money or valuable consideration was paid to said Fairfield to procure from him the said entry of satisfaction of said judgment, unless it was a mere nominal sum, the better to enable him to defend the said Field and Hall of their claim; denies that they sued out the said attachment for the purpose of harassing said Love, but to secure their just claims; denies the insolvency of said Field and Hall; avers that Love has right to the relief prayed for, and that the judgment on the attachment is a valid judgment and the sale under it good, and that reversal of the entry of satisfaction on the original judgment of the Supreme Court of Missouri cannot be set up to impair said judgment in the attachment writ; avers that said Fairfield is insolvent, and prays that bill be dismissed.

The cause was heard upon bill, answer, replication, and evidence.

The evidence consists of the records of the proceedings had in the courts of Missouri, which was all the evidence.

The court below decreed that the sale under the execution issued on the judgment in attachment be annulled and set aside, and that a perpetual injunction be granted, as prayed for in the bill, and that the money deposited with receiver be paid back to said Love, &c. From this decree the said McJilton prayed for, and has brought this case by, appeal, to this court for the purpose of having said decree reversed; and assigns for error, that the court below erred in rendering a decree in favor of said Love, when the decree should have been in favor of the said appellant and his co-defendants, and the bill dismissed.

The cause was heard before UNDERWOOD, Judge, at September term, 1851.

DAVIS & EDWARDS, for appellant.

J. GILLESPIE and S. T. LOGAN, for appellee.

TREAT, C. J.   In May, 1846, Arthur Fairfield recovered a judgment against James Love, in the Circuit Court of the county of St. Louis, in the State of Missouri, for $800.   Field and Hall were the plaintiff's attorneys.   In October, 1846, the sheriff returned the execution issued thereon, satisfied in full by the order of the plaintiff.   In November, 1846, Field and Hall moved the court to vacate the entry of satisfaction, and award an execution on the judgment, to enable them to collect the sum of $500, on the ground that so much of the judgment was assigned to them by Fairfield, with the knowledge of Love, before the return of the execution.   On the 9th of January, 1847, the court set aside the entry of satisfaction as to $500, and directed an execution to issue to collect that amount, for the benefit of Field and Hall.   Love resisted the motion, and took a bill of exceptions to the decision of the court.   On the 12th of January, 1847, Love entered a motion to set aside the order vacating the entry of satisfaction, and awarding an execution on the judgment. The motion was overruled on the 8th of February, 1847, and a bill of exceptions taken by Love.   He afterwards sued out a writ of error, and, at the March term, 1850, of the Supreme Court of Missouri, the order of the Circuit Court sustaining the motion of Field and Hall was reversed, on the ground that the assignment of a part of the judgment was not binding on Love, unless made with his consent.   See Love *v.* Fairfield, 13 Missouri, 300.

In March, 1847, Field and Hall, in the name of Fairfield, but to their use, sued out of the Madison Circuit Court, in this State, an attachment against Love, which was levied on certain real estate.   They declared on the record of the judgment obtained in Missouri, and alleged that $500 thereof remained due and unpaid.   Love pleaded *nul tiel record*, and payment.   On the trial, in August, 1838, Field and Hall read in evidence the record

of the judgment.　Love introduced a transcript of the record, which included the execution and the return of the sheriff.　Field and Hall then produced a transcript of the proceedings, subsequent to the return of the execution.　On this evidence, the court rendered a judgment against Love for $569.09, and awarded a special execution against the property attached.　Love prosecuted an appeal to this court, where the judgment was affirmed, at the December term, 1848.　See Love *v.* Fairfield, 5 Gilm. 303. Field and Hall subsequently assigned the judgment to James T. McJilton.　On the 28th of April, 1849, under a special execution issued on the judgment, the real estate attached was exposed to sale, and bid in by McJilton for $631, who received a certificate of purchase from the sheriff.

On the 26th of April, 1850, Love filed a bill in chancery, in the Madison Circuit Court, against Fairfield, Field and Hall, and McJilton, setting forth, among other things, the foregoing facts, and alleging that McJilton purchased the judgment with full knowledge of all the previous proceedings.　He prayed that the sale might be set aside, and the defendants enjoined from asserting any rights under the judgment; and in the event that relief should be denied, he prayed for leave to redeem the lands from the sale, and brought into court the amount of money necessary for the purpose.　An injunction was granted.　McJilton, in his answer, alleged that he purchased the judgment for a valuable consideration, and without any knowledge of the judgment in Missouri, or of any of the subsequent proceedings thereon.　On the final hearing of the cause, in September, 1851, the injunction was made perpetual, and leave given to Love to withdraw the money deposited.　McJilton prosecuted an appeal.

Under the Constitution of the United States, and the legislation of Congress in pursuance of its provisions, the courts of this State are bound to give the same faith and credit to judicial proceedings had in Missouri, that are by law or usage given to them in the courts of that State.　When such proceedings are drawn in question before our courts, their regularity and validity are to be determined not according to our laws, but with reference to those of Missouri.　If valid and binding on the parties by the laws of Missouri, the proceedings must be held to have

the like force and effect in this State. Mills *v.* Durgee, 7 Cranch, 481; Hampton *v.* McConnell, 3 Wheat. 234; Bimeler *v.* Dawson, 4 Scam. 536.

The original judgment was satisfied of record, by the return of the sheriff. While the entry of satisfaction remained operative, the judgment was wholly without vitality. The record formed no basis for further proceedings. An action of debt could not be maintained upon the judgment; nor could final process issue for its collection. But the order of the court vacating the entry of satisfaction as to $500, imparted to that extent vitality to the judgment. It authorized Field and Hall, in the name of Fairfield, to bring an action on the record, or to sue out another execution on the judgment. We are bound to regard this as the legal effect of the order, under the laws of Missouri. It was considered by the parties as a judicial determination of their rights. It was so regarded by the courts of that State. The highest court in the State entertained a writ of error, to inquire into its validity. And this action of the courts furnishes the most satisfactory evidence of the laws of Missouri, and of the operation and effect of the order. What effect this court would give to a like order of one of our circuit courts, is another question. If the order was binding on the parties by the laws of Missouri, it must be held to have the same force and effect in this State. In this state of the case the parties, having the control of the judgment, come into Illinois and sue out an attachment against the estate of Love, to coerce payment of the amount appearing to be due by the record. He pleaded *nul tiel record*, and thus put them upon strict proof of the existence of the judgment. He likewise attempted to show that the judgment was fully satisfied; but the order, setting aside the entry of satisfaction, effectually concluded him. It was a direct adjudication of the court in which the proceedings were had, that the judgment still continued operative and unsatisfied. So long as the order remained unreversed, Love was precluded from sustaining his plea of payment. If he had offered to introduce proof of payment to Fairfield, he would have encountered the conclusive objection that the court, before which the judgment was obtained, had judicially determined that the payment was

made in fraud of the rights of Field and Hall, and, therefore, could not be interposed to defeat an action brought for their benefit. Nor could he have relied on the pendency of a writ of error in Missouri, as a defence to the action in this State. The pendency of a suit in one State cannot be pleaded in bar or abatement of a second action in another State, between the same parties, and for the same cause of action. Brown *v.* Joy, 9 Johns. 221 ; Walsh *v.* Durkin, 12 Id. 99. And the pendency of a writ of error cannot be pleaded in abatement of another action in the same State, unless the writ of error operates as a supersedeas, and not even then if the writ of error was sued out after the commencement of the second action. Hailman *v.* Buckmaster, 3 Gilm. 498 ; Jenkins *v.* Pepoon, 2 Johns. Cases, 312 ; Peynn *v.* Edwards, 1 Lord Raym. 47. Under these circumstances, it is manifest that Love was not guilty of any laches in the assertion of his rights. He resorted to the only effectual means to remove the obstacle in the way of a perfect defence to the action in this State ; the prosecution of a writ of error to reverse the order vacating the entry of satisfaction. But the course of proceeding in Missouri did not enable him to accomplish that object, until the judgment was recovered in this State, and his lands subjected to sale for its satisfaction.

What was the effect of that reversal upon the rights of the parties ? It restored the entry of satisfaction, and left the judgment discharged of record. It exonerated Love from the payment of any part of the judgment to Field and Hall. It left the judgment in this state, without the least foundation upon which to rest. The law is well settled, that if a judgment is reversed, the parties are to be restored to their original rights, so far as it can be done without prejudice to third persons. If the plaintiff has derived any benefit from the judgment, he must make as full restitution to the defendant, as the circumstances of the case will permit. If he has received payment in money from the defendant, the latter can recover it back in an action of *indebitatus assumpsit.* If he has obtained money by the sale of the property of the defendant, the latter may recover it as so much money had and received to his use. If he has purchased in property under the judgment, and still retains the ownership,

McJilton v. Love.

the defendant may recover the specific property in the appropriate action. If he has aliened the property, he is responsible to the defendant for its value. But the rights of third persons are not affected. Their title to property acquired under an erroneous judgment, is not divested by its reversal. In such case, the defendant must look to the plaintiff for redress. These principles are too well established by authority, to require further discussion. Bank of U. S. v. Bank of Washington, 6 Peters, 8; Clark v. Pinney, 6 Cowen, 297; Green v. Stone, 1 Harris & Johnson, 405; McLagan v. Brown, 11 Ill. 519; Steelman v. Cheeseman, Pennington's Rep. 120; Hubbel v. Broadwell's Administrator, 8 Ohio, 120.

The complainant made out a clear case for the interposition of a court of equity, as against Fairfield, and Field and Hall. And McJilton occupies no more favorable position. He is not a stranger to the judgment. He is not entitled to protection, as a *bonâ fide* purchaser under an erroneous judgment. He was the assignee of the judgment, and had the control of the execution, when he became the purchaser of the lands. By the assignment, he succeeded to no greater rights than Field and Hall had under the judgment. He took the judgment, subject to all the equities subsisting between the original parties. Hines v. Barnity, 8 Watts, 39; Chamberlain v. Day, 3 Cowen, 353; Jeffries v. Evans, 6 B. Monr. 119; Magher v. Kellogg, 24 Wend. 32. A judgment cannot be so transferred, as to vest the legal interest in the assignee. It is a mere chose in action, and the beneficial interest only passes by the assignment. The assignee, however, has the right to enforce its collection for his benefit, and for that purpose, to use the name of the party possessing the naked legal interest. And the courts will protect him against the acts of the assignor, and also against the acts of the debtor, after he has notice of the assignment. But he takes the judgment subject to all defences that existed against it in the hands of the party from whom he received it.

The decree of the Circuit Court is affirmed.

*Decree affirmed.*