# CASES

## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ILLINOIS.

(Nos. 13646-47.—Appellate Court reversed; circuit court affirmed.)
LEVERETT THOMPSON, Defendant in Error, *vs.* ABEL DA-
VIS, Trustee, Plaintiff in Error.—THE CALUMET AND
CHICAGO CANAL AND DOCK COMPANY, Defendant in
Error, *vs.* ABEL DAVIS, Trustee, Plaintiff in Error.

*Opinion filed February 15, 1921—Rehearing denied April 8, 1921.*

1. APPEALS AND ERRORS—*writ of error is a new suit—lis pen-
dens.* A writ of error is a new suit requiring service or appear-
ance, and a third party is not bound to take any notice of it unless
a *supersedeas* is granted, and all he is required to do for his pro-
tection, in the absence of a *supersedeas,* is to look to the question
of the jurisdiction of the court rendering the decree.

2. SAME—*effect where foreclosure decree is reversed after sale.*
Where a writ of error to review a foreclosure decree is not made
a *supersedeas* and the sale is held and the property is bought in
by the mortgagee and is re-sold by it to a stranger, the latter is
entitled to retain the property when the foreclosure decree is re-
versed for error in allowing the mortgagee the full amount claimed,
and on remandment the trial court should require the mortgagee
to make restitution to the mortgagor for the amount which it has
received in excess of that to which it is entitled.

3. SUBROGATION—*the right of subrogation is limited to certain cases.* The right of subrogation is limited to cases where the person making the payment stands in such relation to the premises or parties that his right can only be fully protected by regarding the transaction as an assignment of the incumbrance paid.

4. SAME—*stranger who pays off mortgage is not entitled to be subrogated to mortgagee's rights.* A mere stranger who pays off a mortgage without any express agreement is not entitled to subrogation as an equitable assignee, as such relations must exist that the payment will be regarded as by or on behalf of a person who has some interest in the premises or some claim which he is entitled in equity to have protected.

5. SAME—*to what relations the doctrine of subrogation is confined.* The right of subrogation, as a general principle of equity jurisprudence, is confined to the relation of principal and surety and guarantors, or to cases where a person is compelled to remove a superior title to that held by him in order to protect his own, and to cases of insurers.

6. SAME—*when a mortgagee is not entitled to be subrogated to right of former mortgagee.* A corporation which has loaned money to an individual, which loan is subsequently held to be *ultra vires* except as to a certain part thereof used for purchase money, is not entitled, when ordered to make restitution to the mortgagor, to be subrogated to the rights of a former mortgagee whose incumbrance was paid off by the mortgagor in order to remove the lien and make the mortgage to the corporation a first lien, and it is not entitled to a credit in the amount so paid as against the mortgagor's claim for restitution of the *ultra vires* portion of the loan.

7. MORTGAGES—*when security of junior incumbrance is at an end.* Where a foreclosure decree finds that there is a junior incumbrance and provides that if the property shall sell for more than the amount of the mortgage debt and costs the master shall bring the money into court for further order of the court, but the property does not sell for more than the mortgage debt and costs and there is no redemption by the junior mortgagee, who was a party to the suit and did not appeal, the security of the junior incumbrance is at an end.

CARTER and DUNCAN, JJ., dissenting.

WRIT OF ERROR to the First Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. MERRITT W. PINCKNEY, Judge, presiding.

JESSE LOWENHAUPT, and OSCAR M. WOLFF, for plaintiff in error.

ROSENTHAL, HAMILL & WORMSER, for defendant in error Leverett Thompson.

FRANK H. SCOTT, and EDGAR A. BANCROFT, for defendant in error the Calumet and Chicago Canal and Dock Company.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

The defendant in error the Calumet and Chicago Canal and Dock Company loaned $50,000 to Allen Conkling, who secured the same by a trust deed executed on January 22, 1909, on blocks 138 and 139 in the dock company's subdivision in South Chicago, and on June 19, 1911, Conkling executed a second trust deed to secure the same indebtedness on a strip of land between the two blocks which had been a street or avenue and was alleged to have been vacated. The note of Conkling not having been paid and he having been adjudged a bankrupt, the dock company filed its bill in the circuit court of Cook county to foreclose the trust deeds, and made the plaintiff in error, Abel Davis, trustee in bankruptcy, a defendant. The circuit court entered a decree of foreclosure as prayed and the Appellate Court for the First District affirmed the decree. The judgment of the Appellate Court was reviewed by this court on error pursuant to a writ of *certiorari,* but there had been no *supersedeas* granted on the removal of the record to the Appellate Court and the circuit court proceeded with the execution of the decree. At the sale by a master in chancery the dock company bought the property for $67,000. The equity of redemption expired and the company sold the property to E. F. Gorton, a stranger to the litigation, for $77,600.17, and the master in chancery executed a deed

to Gorton. This court decided that the loan of the money to Conkling was *ultra vires* except as to $15,000, the purchase price of block 139, and that except as to that amount the trust deed created no lien upon the property. The judgment of the Appellate Court and the decree were reversed and the cause was remanded to the circuit court for further proceedings not inconsistent with the views expressed in the opinion filed. When the cause was re-instated in the circuit court, Davis, as trustee in bankruptcy, filed his petition to recover what he had been wrongfully deprived of by the decree which had been reversed. The dock company received from the master in chancery $66,585.20, the proceeds of the sale after the payment of costs. The circuit court decided that the dock company should reimburse the trustee the amount so received over and above the amount of its lien held valid by this court, together with interest from the date of the decree. The dock company appealed from the decree for restitution to the Appellate Court for the First District.

After the circuit court had decided the controversy between the dock company and the trustee, and on the day on which the decree was entered, the defendant in error Leverett Thompson asked leave of the court to file a petition for an allowance to him of the amount of a note for $11,000 out of moneys received from the dock company, and leave was denied. He sued out a writ of error from the Appellate Court, and his writ of error and the appeal of the dock company were consolidated. The Appellate Court decided that the dock company was entitled to be subrogated to the rights and interests of a mortgagee having a prior mortgage on block 138 which Conkling paid, and also had an equitable right to retain the amount so paid by Conkling and $10,800, the alleged value of the strip which had been a street. As to Leverett Thompson, it was held that the circuit court abused judicial discretion in refusing leave to file his petition asking for an allowance of

the amount of his $11,000 note. Based on these conclusions the decree of the circuit court was reversed and the cause remanded, with directions to dismiss for want of equity the petition of the trustee for restitution.

The decree of foreclosure was reversed and set aside and the parties became entitled to be restored to their former rights as nearly as possible. The dock company had received the money from the master in chancery representing not only what it was entitled to but an additional sum to which it had no right, and it was the duty of the court to restore the parties to their rights by requiring the dock company to make restitution of the advantage gained by the reversed decree. (*McJilton v. Love,* 13 Ill. 486; *Fergus v. Woodworth,* 44 id. 374; *Hays v. Cassell,* 70 id. 669; *Clayes v. White,* 83 id. 540; *Gage v. Chicago Theological Seminary,* 106 id. 508; *Ure v. Ure,* 223 id. 454; *Miller v. Doran,* 245 id. 200.) While an appeal operates as a *supersedeas,* a writ of error is a new suit requiring service or appearance, and a third party is not bound to take any notice of it unless a *supersedeas* has been granted. The property could not be restored because Gorton was not a party to the litigation and his title was not subject to attack by the trustee in bankruptcy. All that he was required to do was to look to the question of jurisdiction of the court rendering the decree, and as the court had jurisdiction he would be protected. *Guiteau v. Wisely,* 47 Ill. 433; *Wadhams v. Gay,* 73 id. 415; *Montanye v. Wallahan,* 84 id. 355; *Thompson v. Frew,* 107 id. 478; *Crawford v. Thomson,* 161 id. 161; *Ure v. Ure, supra.*

On the hearing of the petition for restitution the circuit court credited the dock company with the $15,000 held valid and interest thereon to July 3, 1914, the date of the foreclosure, with taxes, insurance, master's fees and solicitor's fees, amounting to $29,124.42, and charged it with the balance of $37,875.58, with interest from the date of the foreclosure decree, amounting to $46,397.46, which the

dock company was ordered to pay to the trustee. When Conkling applied for the loan of $50,000 from the dock company, block 138 which he owned was subject to an existing mortgage amounting to $30,215.86, which he paid to relieve the property from the lien and make the mortgage of the dock company good security. It is contended that the circuit court was in error in not allowing this amount, and the first reason offered is that the dock company was entitled to be subrogated to the rights of the mortgagee on account of the payment by Conkling. Subrogation is a doctrine of equity and is equivalent to an assignment of an incumbrance to the party entitled to be subrogated so that it may enforce the security. By means of the payment the mortgage is not regarded as satisfied and the lien destroyed, but equity regards the person making the payment as becoming the owner of the mortgage, and it is kept alive and the lien preserved for his security. That is so although there is no actual assignment and the mortgage has been discharged and satisfied of record. But the right to subrogation is limited to cases where the person making the payment stands in such relation to the premises or parties that his rights can only be fully protected by regarding the transaction as an assignment of the mortgage. Such relations must exist that the payment is to be regarded as by or on behalf of a person who had some interest in the premises or some claim against other parties which he is entitled in equity to have protected, and a mere stranger who pays off a mortgage can never be an equitable assignee. Subrogation, as a general principle of equity jurisprudence, is confined to the relation of principal and surety and guarantors, or to cases where a person is compelled to remove a superior title to that held by him in order to protect his own, and in cases of insurers. (*Bishop* v. *O'Conner,* 69 Ill. 431; *Borders* v. *Hodges,* 154 id. 498; *Home Savings Bank* v. *Bierstadt,* 168 id. 618; *Novak* v. *Kruse,* 288 id. 363; 3 Pomeroy's Eq. Jur. secs.

1211-1213; 25 R. C. L. 1317.) The dock company had no interest in block 138, was not entitled to redeem from the mortgage and was not the principal debtor, and the payment was made by Conkling, who was personally and primarily liable for the debt and whose duty it was to pay the mortgage. The dock company did not stand in any relation which entitled it to subrogation under the settled rules of equity on that subject. It had no more power or better right to loan the money to Conkling to pay a prior mortgage than for any other purpose or to pay any other obligation of Conkling.

There is a further principle applied in equity which is termed conventional subrogation, which arises from an express agreement, where equity will effectuate the real intention of the parties if no injury is done to an innocent party, as in the case of *Home Savings Bank* v. *Bierstadt, supra.* There was an absence of any sort of an agreement that the dock company should have any benefit from the payment of the mortgage on block 138, or was in any way concerned with it except to know that the title was clear so that the trust deed to the dock company would be good security. There was no ground for conventional subrogation.

There is a further proposition of counsel for the dock company that it had an equity in the sum of money that was paid to discharge the prior mortgage and the value of the strip which had been a street and alleged to have been vacated, and the trustee having invoked the aid of a court of equity must do equity by allowing those amounts to the dock company. It is a rule that one who seeks equity must do equity, and the Appellate Court having held that the equities of the dock company exceeded the total amount received by it, the trustee, upon acknowledging those equities, would have been better off if he had never employed counsel to assert an equity, because his equity was inferior and of no value. We do not see how it can be said that the dock company had any equity arising out of disobedience

297–2

of law and public policy. It is true that in courts of equity, in cases where usury has been contracted for, and in similar cases, if a party asks to be relieved from the illegality he will be required to do what the law would have permitted, and it is also true that there may be relief although a corporation has violated public policy in some other matter, but it cannot be so where the violation is in the identical subject matter of the litigation. Respect for the law and considerations of public policy forbid the application of the doctrine contended for where a corporation, as a creature of the law with limited and delegated powers, seeks to accomplish indirectly what it could not do directly. The dock company, within its delegated powers, had no right to loan the money to Conkling, and to allow to it a credit because Conkling removed the prior incumbrance would be to subvert the law and disregard both law and public policy, which the court is bound to uphold.

If it should be conceded that the trustee, in asking to be restored to the rights declared by this court, was seeking to establish a mere equity, the dock company had no equity created by the execution of the decree which he was required to acknowledge. But that was not the situation. The question now and here is not whether the dock company has a claim against the estate of the bankrupt on the ground that it would have a right of action under the common counts,—not because of the unlawful contract but regardless of and independent of it,—under the authority of *Brennan* v. *Gallagher,* 199 Ill. 207, *Leigh* v. *American Brake-Beam Co.* 205 id. 147, *United States Brewing Co.* v. *Dolese & Shepard Co.* 259 id. 274, and *Mercantile Trust Co.* v. *Kastor,* 273 id. 332. Whether the dock company is to be treated as a creditor because of the legal right is a matter for another court. The question here is whether the court, having set aside a contract as illegal except as to $15,000 and interest, shall ratify and confirm the contract to the fullest extent by giving the dock company every right

it would have had if the contract had been lawful, on the ground that the decree reversed was executed pending the writ of error and the trustee has asked to be restored to his rights. The trustee was made a defendant in a suit to enforce an alleged lien for $50,000 and interest, and he is still a defendant. The dock company had a lien for $15,000 and interest and no more, and it caused the decree to be executed pending a review by writ of error and appropriated the entire proceeds. The trustee asked a return of the money, to which the dock company had no right, and was met with the claim that it had acquired a right to keep it under the rule that one who seeks equity must do equity. The order of the Appellate Court to the circuit court was to dismiss the petition of the trustee, and that order was the necessary sequence of holding that the dock company was entitled to everything it would have had under a lawful contract, and that the judgment of this court was a mere idle form, by which the trustee secured no right. If the decree had not been executed the trustee would have had the property on payment of the amount lawfully due the dock company, and if it had any further right it would have been as an unsecured creditor of the bankrupt's estate. The trustee certainly could not be placed in a worse position because of the execution of the decree by sale and the appropriation by the dock company of the proceeds, which stood in the place of the land. To say that the trustee could have had the land subject only to the payment of the valid lien but cannot have the money substituted for the land would be self-contradictory. This court has not declared such an absurdity in the name of equity, and to hold that the dock company created an equity or acquired a right by the execution of the decree pending the writ of error would be an anomaly in jurisprudence. If the dock company had an equitable right beyond the amount of its lien and a reversal would be of no benefit to the trustee, the time and place to say so was when the case was here and

the rights of the parties were declared. The trustee is asking now what he was asking then, and that only, and is in no proper sense an actor seeking to establish an equitable right or title or to secure what he would be entitled to only in equity. In *Dunbar.* v. *American Telephone and Telegraph Co.* 224 Ill. 9, and 238 id. 456, the complainant asked the court to set aside a sale of stock and rescind the transaction as entered into for the purpose of creating a monopoly, contrary to public policy and *ultra vires.* The decree required re-payment of the purchase price, and nothing was said by this court concerning the question of re-payment except as to the cross-bill of Kellogg, which sought to rescind the contract for fraud, and the court said the contract being merely voidable, the complainant in the cross-bill should have offered to refund the purchase price. A decision that a party seeking to set aside a sale and regain the title must restore the consideration, gives no support to the argument in this case that a party may seek in the courts the enforcement of an unlawful contract and have all the benefit of it by indirection under an alleged equity.

The Appellate Court held that the dock company was entitled to retain $10,800 in addition to the $15,000 because of its deed to Conkling of what was alleged to be a vacated street or highway. It is said by counsel for the dock company that this strip was thrown in with the rest gratuitously, and the only evidence of value was on the theory that the street had been legally vacated, which does not appear; but at any rate, that matter was finally and conclusively settled on the former appeal. The right of foreclosure was there assailed, and if the dock company was entitled to anything under the second trust deed because it had conveyed the strip to Conkling it should have been set up at that time. Whether there is any merit in the present claim or not, it is too late to raise the question now.

The Appellate Court held that the circuit court erred in denying leave to Leverett Thompson to file his petition

for an allowance on account of his alleged junior incumbrance, but as the dock company had been allowed more than the total sum in its hands and the cause was remanded with directions to dismiss the petition of the trustee, Thompson would obtain no relief. In that view a consideration of his claim would give him nothing, but he had no claim, either legal or equitable. His counsel insist upon his right, and counsel for the dock company contend that his claim is superior to that of the trustee. He had acquired a junior incumbrance held at the time of the foreclosure by the Central Trust Company, which was a party to the foreclosure suit. In the decree in that case the court found that it was a junior incumbrance, and provided that if the property should sell for more than the amount due on the mortgage to the dock company and costs, the master should bring the balance into court for the further order of the court. The property did not sell for any more than the amount found due the dock company, and the Central Trust Company did not redeem and its security was at an end. If the Central Trust Company claimed any other right than that given it by the decree it should have set it up in the foreclosure suit or appeal from the decree or had it reviewed on error.

The court allowed interest from July 3, 1914, the date of the foreclosure decree. The decree drew interest of which the dock company had the benefit, and a court of equity will allow interest in a proper case although not within the precise terms of the statute providing for interest. It was equitable that the dock company should account for interest.

The judgment of the Appellate Court is reversed and the decree of the circuit court affirmed.

> *Judgment of Appellate Court reversed.*
> *Decree of circuit court affirmed.*

CARTER and DUNCAN, JJ., dissenting.