Howard K. Hurwith, Appellant, v. Edward B. Carson et al., Appellees.

Gen. No. 39,081.

Opinion filed May 19, 1937. Rehearing denied June 2, 1937.

A. HENRY GOLDSTEIN, of Chicago, for appellant; AARON SOBLE and MAX CHILL, both of Chicago, of counsel.

CHADWICK & JOHNSON, of Chicago, for appellees; RUDOLPH L. JOHNSON and CECIL L. CASS, of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This is an appeal by the plaintiff named in the title of the case from that part of the decree of foreclosure

entered May 28, 1936, in the circuit court of Cook county, Illinois, as follows:

(a) Ordering that the objections to the said report of the master in chancery, filed by counsel for the Chicago Bond and Securities Company, which were disallowed and overruled by the said master, be sustained, and that the report of the said master in chancery is overruled in so far as the objections of the Chicago Bond and Securities Company are concerned;

(b) And that the report of the master is in all other respects approved and confirmed by the court, in so far as the conclusions of law of the master that the contract was the contract of Chicago Bond and Securities Company, a corporation, and the funds used were the funds of the Chicago Bond and Securities Company, and that the money used was not the money of Edward B. Carson, because to hold otherwise would be an injustice to the other shareholders of the Chicago Bond and Securities Company, a corporation.

The proceeding in which the decree appealed from was entered is based on a bill of complaint to foreclose a trust deed, upon the real estate therein described, executed by Nick Mannos, a bachelor, to the Greenebaum Sons Bank and Trust Company, as trustee, given to secure a bond issue of $125,000, bearing interest at 6½ per cent per annum, until date of maturity, and 7 per cent after date of maturity, all payable at the office of Greenebaum Sons Investment Company; that prior to the filing of the foreclosure proceeding there remained unpaid bonds in the principal amount of $87,000, which matured on January 1, 1931, and interest amounting to $2,827.50, which also matured on January 1, 1931.

It is further stated in the bill of complaint that some $40,000 worth of bonds were acquired by Edward B. Carson and Frances L. Carson, his wife, and that the said bonds are subordinate to the outstanding bonds

issued under this trust deed; that A. B. Cross and Milford F. Henkel are the owner or owners, holder or holders of bonds issued under this trust deed, but that the bonds so owned by Milford F. Henkel and A. B. Cross are in truth held for Edward B. Carson and Frances L. Carson, his wife.

That title to the premises in question was held by Edward B. Carson and Frances L. Carson, his wife, and under and by virtue of the deed by which they held title, said Edward B. Carson and Frances L. Carson, assumed and agreed to pay the indebtedness secured by the trust deed herein sought to be foreclosed; that by mesne conveyances, title to the premises was conveyed to Eddy C. Powell, who, it is claimed, is acting for Edward B. Carson and Frances L. Carson, his wife.

The prayer, among other things, asks that the court may find the respective priorities as between the various owners and holders of bonds, and coupons secured by the trust deed sought to be foreclosed herein; that in default of payment of the amount found to be due, that the premises described in said trust deed be sold to pay the amount so found to be due and owing the complainants, and that all persons and defendants herein may be forever barred.

Subsequently the bill was amended as follows:

"Your orator further respectfully represents that it is advised and informed, and therefore, states the fact to be that Chicago Bond and Securities Company has or claims to have some right, title, interest or lien in and to the premises described in the bill of complaint, or some part or portion thereof, but your orator avers that the right, title, interest or lien of the said Chicago Bond and Securities Company, if any it has, is subject, junior and inferior to the lien of your orator."

An answer was filed containing the joint answers of William C. Larson, trustee, under the trust deed from Eddy C. Powell and Mary Powell, his wife, upon the

property in question and the Chicago Bond and Securities Company. The answer states that these defendants deny all manner of unlawful combination and conspiracy wherewith they are charged in said bill of complaint.

Subsequently evidence was heard by the master in chancery, to whom the cause was referred by the court, and who filed his report.

Following the filing of the report of the master in chancery, the court sustained objections filed by counsel for the Bond and Securities Company, and overruled the report of the master in so far as objections of the Chicago Bond and Securities Company were concerned, and the amounts allowed as solicitors' fees, and in all other respects approved and confirmed the report.

The errors relied upon for reversal by the plaintiff are:

"(1) That part of the Master's report, approved by the court, finding that the contract between Greenebaum Sons Investment Company and A. B. Cross was the contract of the Chicago Bond and Securities Company, but instead said Master should have found that said contract was the contract of Edward B. Carson and Frances L. Carson, his wife.

"(2) That part of the Master's report, approved by the Court, finding that the funds used for the purchase of the bonds were the funds of the Chicago Bond and Securities Company, but instead should have found that these funds were supplied by Edward B. Carson.

.    .    .    .    .

"(5) That part of the decree of the Circuit Court which overruled the Master's report finding that the bonds held by the Chicago Bond and Securities Company are subordinated to the other bonds outstanding and allows the bonds of the Chicago Bond and Securities Company to share on a parity in the security with

the other bondholders who had no knowledge of the contract entered into, but instead should have found that the bonds held by the Chicago Bond and Securities Company have been paid and the security released from the lien of said bonds, or else that said bonds are subordinated and inferior to other outstanding bonds in so far as any rights against the security are concerned.''

From the facts in the record, it appears that the Greenebaum Sons Investment Company and Greenebaum Sons Bank and Trust Company floated the bond issue involved in this litigation. They were also the paying agents. The bondholders, at interest dates and maturity of the prepayment bonds and final maturity, were directed to present them to Greenebaum Sons Investment Company for payment, Greenebaum Sons Investment Company paid the bondholders, after first having received money for payment of the bonds from the mortgagor or the person having an interest in the property.

The bonds here in litigation were taken for collection by Greenebaum Sons Investment Company, from the holders thereof, sent to the First Union Trust and Savings Bank, and when they, Greenebaum Sons Investment Company, received the money therefor, they paid these holders with checks of Greenebaum Sons Investment Company, all this purporting to have been in the regular channels of payment, save that instead of receiving par and accrued interest, the holder received 80 per cent of par, or another bond of Greenebaum Sons Investment Company in exchange.

The bonds were sold to the Chicago Bond and Securities Company by Greenebaum Sons Investment Company. They were delivered to Milford F. Henkel, an attorney, nominally for A. B. Cross. An agreement was entered into between the parties, and it was by this agreement that the Greenebaum Sons Investment Com-

pany was to act for itself as principal, and not as agent of any party, and further that the existence of this agreement was not to be disclosed to any of the bondholders. That in pursuance and under the agreement $49,500 in principal amount of these bonds were acquired by Greenebaum Sons Investment Company from the various bondholders, and subsequent thereto were sent to First Union Trust and Savings Bank who delivered them to Milford F. Henkel, attorney for A. B. Cross, who in turn turned them over to the Chicago Bond and Securities Company, who are now the holders thereof.

That the money to pay for the purported purchase of bonds at 80 cents on the dollar, came from the Chicago Bond and Securities Company, by checks signed by Edward B. Carson, its president, amounting in all to $45,800; that at the time of the acquisition of the bonds, more than 60 days had elapsed from their final maturity date; that Greenebaum Sons Investment Company did not purport to act under section 2 of Article III of the trust deed, and did not follow the provisions therein; and failed to give written notice to the trustee within 90 days after default of its election to consider the bonds acquired by it on a parity with all other bonds.

The decree finds there is due the complainant, Howard K. Hurwith, as successor trustee, the total sum of $120,638.29, being the principal amount of the bonds plus interest coupons for the benefit of the bondholders, including the bonds of the Chicago Bond and Securities Company.

An important question in this case is whether these bonds acquired by the Chicago Bond and Securities Company can be considered on a parity with the bonds which are affected by the foreclosure now here on appeal. As we have indicated, section 2 of Article III of the trust deed applies in considering the questions here on appeal. It is provided in the trust deed that:

"In consideration of the purchase for investment or resale by Greenebaum Sons Investment Company of bonds hereby secured, . . ."

". . . in case default be made in the payment of any one of the installments of interest upon any of the said bonds, at the time and place aforesaid, . . . or if default be made in the payment of the principal of any one or more of said bonds, at the time and place aforesaid, when and where the same become due and payable, as aforesaid, . . . ."

". . . Greenebaum Sons Investment Company may at maturity, or at any time within sixty (60) days after such default, pay to the holder or holders of such defaulted bonds or interest coupons the amount due thereon, and such bonds or interest coupons shall thereupon be deemed to have been purchased by said Greenebaum Sons Investment Company, and such bonds or interest coupons shall be delivered uncancelled to said Greenebaum Sons Investment Company, and shall become and be the property of said Greenebaum Sons Investment Company. The payment for such defaulted bonds or interest coupons as aforesaid by said Greenebaum Sons Investment Company shall not be considered a voluntary payment by it for the benefit of the mortgagor hereunder, or for the benefit of any of the other holders of bonds or interest coupons, secured hereby, and shall not have the effect to pay or retire the said bonds or interest coupons so purchased by it, . . ."

It is further provided that "In the event of such purchase, as aforesaid, by said Greenebaum Sons Investment Company of such defaulted bonds or interest coupons, said Greenebaum Sons Investment Company, may, at any time within ninety (90) days after such default, exercise the option whether (1) to assert, on a parity and equality with the holders of all of the other bonds and interest coupons, secured hereby, all or any of the rights given by this deed of trust to the former

holders of such defaulted bonds or interest coupons, including the right, at any time after such default has continued for thirty (30) days, to declare immediately due and payable the principal of all of the bonds then outstanding and unpaid and to foreclose this deed of trust in accordance with its provisions.''

The question here is whether Greenebaum Sons Investment Company has complied with the provisions of the trust deed. To exercise its rights under this trust deed it should have given written notice within 90 days after default to the Greenebaum Sons Bank and Trust Company, trustee, that these bonds were to be considered on a parity and equality with the holders of all of the other bonds and interest coupons secured by the trust deed.

The appellant contends, however, that the bonds were not acquired in the manner provided for in the trust agreement, and that they were acquired after the time provided for in said trust deed, and there was a marked failure to give notice to the trustee under the terms of the trust deed.

We quite agree with appellant that it does not appear from the evidence in the record that notice was ever given by Greenebaum Sons Investment Company of its intention, within 90 days after default, to exercise its option to assert on a parity with the holder of all of the other bonds and interest coupons secured by the trust deed, all or any of the rights given to the other defaulted bonds.

The appellant then points out that the evidence on this question discloses that the agreement above mentioned was entered into on the 28th day of February, 1931, between Greenebaum Sons Investment Company and A. B. Cross, which was almost 60 days after the final maturity date, and that not until March 4, 1931, were any of the bonds presented by Greenebaum Sons Investment Company to the First Union Trust and

Savings Bank for collection, being more than 60 days after the maturity thereof, and that subsequent purchases were made by Greenebaum Sons Investment Company, but none of them was made under and in pursuance of the trust deed, wherein it was provided that where the provisions of the trust deed were followed, bonds acquired by Greenebaum Sons Investment Company could be deemed on a parity with all other bonds.

The general rule is that purchasers of bonds, either before or after maturity, take them subject to the provisions of the trust deed, and are bound thereby where they seek in an equitable proceeding to foreclose by reason of a default in the payment of amounts that may be due under the provisions of this deed, and the bondholder is properly chargeable with notice of these provisions. In passing upon this question the Supreme Court in the case of *King v. Harpster,* 306 Ill. 202, said: "He (referring to the assignor) could transfer no better title than he had. His grantee could acquire no rights which Rice, the holder of the mortgage, did not possess, not because the bank had actual notice of the transaction, but because in equity it was affected with notice. Its rights were only those of its grantor. Since its grantor could not foreclose in equity, the grantee had no power to do so. The doctrine of an innocent purchaser for value, which applies to commercial paper, has no application to a mortgage. The assignee of a mortgage takes it subject to the same equities it was subject to in the hands of the assignor. The assignee of a mortgage knows that it is not assignable at common law, but only in equity, and that he takes it subject to all equities existing in favor of the mortgagor. . . . (*Olds v. Cummings,* 31 Ill. 188; *Silverman v. Bullock,* 98 id. 11; *Himrod v. Gilman,* 147 id. 293; *Buehler v. McCormick,* 169 id. 269; *Peacock v. Phillips,* 247 id. 467.) The right to recover on the note against its makers in a court of law is not involved in this case, which

is concerned only with the lien of the trust deed on the land. The bank expressly declined to become a purchaser of the note and trust deed from Mrs. Miller but with her approval lent Rice the money with which to pay her, upon his taking the trust deed and pledging it as collateral security for his note to the bank. As between King, the mortgagor, and Rice, the debt was extinguished, and could not have been enforced by Rice against King, and the bank being only Rice's equitable assignee cannot enforce it." See also *Kratzmeyer v. Weissman*, 235 Ill. App. 305.

It is further pointed out by the appellant that if the bonds were purchased by the Chicago Bond and Securities Company at the request of Edward B. Carson, the security is kept alive for the benefit of the Chicago Bond and Securities Company, but the enforcement of such security is junior, inferior and subject to the prior lien of the other bondholders against this security. In support of the theory which he seeks to advance, he calls to the attention of the court the case of *Central Trust Co. v. Calumet Co.*, 260 Ill. App. 410, wherein the court upon the question of subrogation of the rights of the bondholders in and to the security, said:

"The rule that subrogation can be enforced only when the whole debt is paid is for the protection of the holder of that part of the debt not paid, and we cannot see that defendants are interested. Inasmuch as the decree subordinates the rights of complainants to the lien of the subsequently maturing bonds, complainants have, in effect, a second mortgage and can enforce it in any way which the law allows, provided that such enforcement does not affect the rights of the holders of the remaining outstanding bonds and coupons." See also *Thompson v. Davis*, 297 Ill. 11.

There seems to be no question that the Chicago Bond and Securities Company purchased the bonds through the Greenebaum Sons Investment Company under a

contract between these parties; that the bonds were subject to the terms and provisions of the trust deed, and that there was a failure of compliance with the terms thereof for the purpose of maintaining these bonds on a parity with the bonds of the other bondholders. Therefore, it is our opinion that these bondholders should be protected to the extent that whatever recovery may be had, their bonds should be subrogated to the rights these bondholders had at the time they were purchased by the Chicago Bond and Securities Company. The bonds were purchased after maturity and no notice was given within the time fixed by the trust deed, and therefore they are subject to the rights of the bonds purchased before maturity by the bondholders who have complied with the provisions of the trust deed.

Upon the question of subrogation, the Supreme Court in the case of *Home Savings Bank v. Bierstadt,* 168 Ill. 618, said: "But in addition to this principle of legal subrogation there exists another principle, which is termed conventional subrogation, which results from an equitable right springing from an express agreement with the debtor, by which one advances money to pay a claim for the security of which there exists a lien, by which agreement he is to have an equal lien to that paid off, whereupon he is entitled to the benefit of the security which he has satisfied with the expectation of receiving an equal lien."

From the facts, as well as the law applicable to the instant case, it would seem but equitable that the Chicago Bond and Securities Company could claim rights under the doctrine of conventional subrogation to that part of the debt which was purchased by the Securities Company, but its claim, under the facts and terms of the trust deed and the condition under which the purchase was made, is junior and inferior to the other outstanding bonds not paid, and this principle is recog-

nized in part by ch. 95, ¶ 22 (1) of the Ill. State Bar Stats. 1935; Jones Ill. Stats. 83.23, which provides:

"Any person who has a mortgage lien upon any land against which there exists a prior mortgage may pay any interest or any installment of the principal or interest which may be in default upon any such prior mortgage and all such sums so paid shall become a part of the debt secured by such junior mortgage, shall bear interest from date of payment at the same rate as the indebtedness secured by such prior mortgage and shall be collectible with, as a part of and in the same manner as the amount secured by such junior mortgage."

It would be inequitable to approve the suggestion of the plaintiff that the bonds in question were acquired by Edward B. Carson and Frances L. Carson, his wife, acting through the Chicago Bond and Securities Company, and hence have been paid. Assuming for the purpose of this argument that the plaintiff was correct in his theory that Carson acted through the Chicago Bond and Securities Company when these bonds were purchased, still there is nothing in the trust deed which would prevent a mortgagor, or one assuming and agreeing to pay the amount of the mortgage, from acquiring title by purchase of the bonds secured by the trust deed, and either applying them in payment of the mortgage indebtedness, or, where the trust deed is being foreclosed, from acquiring rights on a parity with the other bondholders.

Under the circumstances, however, we are of the opinion that the Chicago Bond and Securities Company did advance money in the purchase of these bonds, but having failed to comply with the provisions of the trust deed, the bonds so purchased are not on a parity with the bonds secured by the trust deed now in the process of foreclosure.

In view of our conclusions we are of the opinion that the court erred in the entry of its decree wherein it

finds that the bonds of the Chicago Bond and Securities Company are on a parity with the bonds of the other bondholders which are a part of the foreclosure proceedings provided for by the terms of the trust deed.

For the reasons stated the decree is reversed and the cause remanded.

*Reversed and remanded.*

DENIS E. SULLIVAN, P. J., and HALL, J., concur.