(No. 28192.—

THE FIRST NATIONAL BANK OF JONESBORO *et al.,* Appellees, *vs.* ROAD DISTRICT No. 8, Appellant.

*Opinion filed January 17, 1945.*

Paul D. Reese, of Jonesboro, for appellant.

Mr. Justice Thompson delivered the opinion of the court:

This is an appeal on leave granted to review a judgment of the Appellate Court for the Fourth District. The suit was brought by appellee The First National Bank of Jonesboro to restrain appellant, Road District No. 8, from proceeding with the prosecution of a suit at law for the recovery of certain moneys in the total sum of $3521.48, which were on deposit in said bank in a special account designated as "Road District No. 8 drainage fund." Said bank also prayed for a decree determining the ownership of said fund and directing disbursement. All of the various claimants to the fund were made parties defendant.

The facts out of which the controversy arose are set forth in the second amended complaint and admitted by all the parties to the suit. The appellant, Road District No. 8, in the years 1915 and 1916 levied against the taxable property in the district the respective sums of $2500 and $1500 for "ditching to drain roads." The proceeds arising from the collection of these taxes, amounting to $2124.19, were segregated from the other funds of the district and by it, on June 9, 1920, deposited in the special account above mentioned, which, with the accumulation of interest thereon, now amounts to said total sum of $3521.48. Prior to the levy and collection of said taxes, the appellee

drainage districts and the Miller Pond Drainage District had levied against said Road District No. 8 special assessments for benefits to the roads of said district by the drainage improvements constructed by said drainage districts. The drainage assessment of the Miller Pond district has been entirely paid, but there still remains an unpaid balance upon each of said assessments levied by the other drainage districts. Subsequent to the levy and collection, by Road District No. 8, of the taxes deposited in said special account, there have been created by the county board of Union county appellees Road District No. 10 and Road District No. 11, each of which includes within its boundaries territory formerly constituting a part of Road District No. 8.

On October 24, 1941, a final decree was entered permanently enjoining the suit at law, apportioning the fund among appellees The Clear Creek Drainage & Levee District of Union and Alexander counties, The Preston Levee & Drainage District of Union county and Road Districts Nos. 10 and 11, and ordering the bank to make distribution accordingly. Road District No. 8 perfected an appeal to this court, but there being no question involved which would give this court jurisdiction on direct appeal, the cause was transferred to the Appellate Court for the Fourth District. *First National Bank of Jonesboro* v. *Road District No. 8*, 382 Ill. 508.

No order that the appeal in this case should operate as a *supersedeas* was entered by either the trial or reviewing court, and the bank made distribution of the funds involved, as directed by the decree. The bank's report of distribution was filed with the circuit court and said court, on June 5, 1942, entered a decree approving the same and discharging said bank from any and all further liability in connection with the funds so distributed. These facts were brought to the attention of the Appellate Court when the appeal came on for hearing; and thereupon that court held

that inasmuch as *supersedeas* had not been granted and distribution of the funds had been made as directed by the decree, the controversy involved in the appeal as to the ownership of the funds distributed had become moot, and dismissed the appeal.

A court of review will dismiss an appeal when it has notice of facts which show that only moot questions or abstract propositions are involved. When a case presents or involves no actual controversy, interests or rights of the parties, or when the issues have ceased to exist, or when only abstract questions are involved on which the court can grant no effectual relief to either party, or when, pending the disposition of a case in a court of review, an event occurs which renders any judgment which might be entered by the reviewing court useless and unavailing to either party, the appeal or writ of error will be dismissed. (*Chicago City Bank and Trust Co.* v. *Board of Education,* 386 Ill. 508.) The general correctness of these propositions must be conceded. Their application to the particular case here presented is, alone, to be considered.

It is the contention of appellant that the Appellate Court has misapprehended the purpose, scope and effect of a *supersedeas,* and that the issues raised by an appeal from a decree for the payment of money do not become moot by the subsequent execution of the decree in the absence of a *supersedeas.* A *supersedeas* suspends the efficacy of a judgment. Its object and purpose are to stay future proceedings. It restrains the appellee or defendant in error from taking affirmative action to enforce his judgment or decree and operates as notice that all proceedings on the judgment are to be stayed until the determination of the cause by the reviewing court. (*People ex rel. Finn* v. *David,* 328 Ill. 230; *Blackerby* v. *People ex rel. Metz,* 10 Ill. 266.) Prior to the enactment of the Civil Practice Act, every appeal operated in and of itself as a *supersedeas* or stay of all proceedings to enforce the execution of the

judgment or decree pending the appeal. (*People ex rel. Finn* v. *David,* 328 Ill. 230; *Thompson* v. *Davis,* 297 Ill. 11; *Hopkins* v. *Patton,* 257 Ill. 346.) The reasons for this were twofold: first, an appeal was a continuation of the proceedings below; and second, a bond was an essential and integral part of every appeal. (*Hopkins* v. *Patton,* 257 Ill. 346.) A writ of error, however, was a new suit, in which no bond was required and which did not operate as a *supersedeas* unless a bond was given and the writ of error ordered to be a *supersedeas* by the court of review or some judge thereof in vacation. (*Thompson* v. *Davis,* 297 Ill. 11.) A litigant, under the former Practice Act, could obtain a review of a judgment or decree by either or both of these methods of appellate procedure. By the Civil Practice Act, he was deprived of this privilege. Section 74 of said act provides: "Every order, determination, decision, judgment or decree, rendered in any civil proceeding, if reviewable by the Supreme or Appellate Court of this State by writ of error, appeal or otherwise, shall hereafter be subject to review by notice of appeal, and such review shall be designated an appeal and shall constitute a continuation of the proceeding in the court below." (Ill. Rev. Stat. 1943, chap. 110, par. 198.) The requirement that bond be given in all cases of appeal was eliminated and section 76 of the act provides that an appeal shall be deemed perfected when the notice of appeal shall be filed in the lower court and that no step other than that by which the appeal is perfected shall be deemed jurisdictional. Under section 82, an appeal now does not, as formerly, operate as a *supersedeas,* but in order to have that effect, bond must be given and order entered approving the same. (Ill. Rev. Stat. 1943, chap. 110, par. 206.) Section 82 also provides that where an appeal is prosecuted by a public, municipal, governmental or *quasi*-municipal corporation, or by any public officer in his official capacity for the benefit of the public, the trial or reviewing court or any

judge thereof, may, without requiring any bond to be given, order that the appeal shall operate as a *supersedeas*.

While section 82 of the Civil Practice Act provides when and under what conditions an appeal shall operate as a *supersedeas,* section 76 of the same act (Ill. Rev. Stat. 1943, chap. 110, par. 200,) provides that the reversal or modification of an order, judgment, decree or other determination shall not affect the right, title or interest in or to any real or personal property of any person, not a party to such action, acquired after the entry of such order, judgment, decree or other determination, but before such appeal operates as a *supersedeas* under the provisions of the act, nor affect his rights under a certificate of sale issued before such appeal operates as a *supersedeas,* pursuant to a sale based on such order, decree, judgment or other determination. Section 32a of the Judgments Act (Ill. Rev. Stat. 1943, chap. 77, par. 35a,) contains similar provisions for the protection, in the absence of a *supersedeas,* of the rights of persons not parties to the suit when the judgment or decree authorizing the sale under which such rights were acquired is subsequently modified or reversed. These provisions of the Civil Practice Act and of the Judgments Act are expressly for the protection of persons not parties to the suit. No such protection is afforded the parties to the action, and it has never been the rule that their rights are the same as those of strangers to the litigation. It is not reasonable to suppose that the legislature intended that a judgment or decree for the payment of money should, upon its enforcement by execution or otherwise, in the absence of a *supersedeas* pending an appeal, become final and no longer subject to review, so as to require the dismissal of the pending appeal, notwithstanding provision is expressly made for the prosecution of an appeal without *supersedeas*. A party to a suit is presumed to know of all the errors in the record, and such party cannot acquire any rights or interests based on such

erroneous decree that will not be abrogated by a subsequent reversal thereof. If such party has received benefits from the erroneous decree or judgment, he must, after reversal, make restitution, and, if he has sold property erroneously adjudged to belong to him, he must account to the true owner for the value. Titles acquired by parties to the record under an erroneous decree or judgment will be divested by the subsequent reversal of such decree or judgment. (*Thompson* v. *Davis,* 297 Ill. 11; *Ure* v. *Ure,* 223 Ill. 454; *McJilton* v. *Love,* 13 Ill. 486.) A party to a decree cannot acquire any rights thereunder while the same is subject to review which he can assert after the decree is reversed, since the effect of the reversal is to abrogate the decree and leave the cause as it stood prior to the entry of the decree. (*Ure* v. *Ure,* 223 Ill. 454.) These principles were announced by this court many years ago (*McJilton* v. *Love,* 13 Ill. 486,) and are as entirely sound and as applicable now as they were then. It follows from these rules that the distribution of the funds in controversy by the appellee bank among the various parties to the suit, under the decree appealed from, cannot have the effect of causing the issues and questions involved in the appeal to become moot or academic; that the bank, when it made the distribution, and the other appellees, when they accepted the same, took their chances of said decree being reversed; and that if said decree, upon final disposition of the appeal therefrom, should be reversed, the appellees who had received, under said decree, moneys to which they were not entitled, should be required to make restitution. We can not agree that because the funds in controversy have passed from the possession of one of the parties to the litigation into the hands of other such parties, as directed by the decree of the trial court, it would now be an idle ceremony for the Appellate Court to order distribution of those funds upon any other theory. To so hold, would be to ignore entirely the distinction between the rights of third

persons and those who are parties to a judgment or decree which is afterwards reversed. This distinction is too well established to require further discussion.

For the reasons above stated, the judgment of the Appellate Court is reversed and the cause is remanded to that court with directions to consider the assignments of error raised in that court by·the appellant.

*Reversed and remanded, with directions.*